In the Matter of the Accounting of SECURITY TRUST COMPANY OF ROCHESTER, as Trustee under the Will of FRANK A. STECHER, Deceased.*

Surrogate's Court, Monroe County, September 30, 1947.

* See, also, *Matter of Harrison,* 190 Misc. 215.— [REP.

*Andrew L. Gilman* and *A. Roger Clarke* for trustee, petitioner.

*Archibald M. Little* for Norma S. Welch and others, respondents.

*David H. Shearer,* special guardian for infants.

WITMER, S.  On this judicial settlement proceeding construction of the will is requested to determine whether or not the word " children " as used therein includes descendants beyond

the first degree, and adopted children. The testator, a widower, executed his will in April, 1916, and died the following May. He was survived by two daughters, Caroline M. Schlegel, aged thirty-five years, and Louise M. T. Skuse, aged forty-two years, the former having one daughter then one year old and the latter a daughter two years old. The testator left his residuary estate, valued at $700,000, in trust. He gave $14,000 of the income thereof to his younger daughter and $10,000 of the income to the other daughter for their respective lives. The remaining income he directed to be divided equally among his nephews and nieces surviving him, but if any of them should predecease the survivor of his two daughters, " then the children of such nephew or niece so dying, shall take what would otherwise be the parent's share." He directed that upon the death of each daughter $25,000 be paid out of the principal of the trust " to each child or children left by such daughter so dying "; and that upon the death of both daughters, after making such payments to their children, the remainder of the trust fund should be divided into as many parts as testator had nephews and nieces him surviving " and who shall at the time of the death of my daughters be either living or leave children living," and pay one part to each such nephew and niece, " or if any shall die, subsequent to my death and before the death of the survivor of my daughters and shall leave children, then in such case one of such parts shall go to his or her children to be equally divided between them."

At the testator's death he had thirty-nine nephews and nieces living, all of full age, and by coincidence the same number of grandnephews and grandnieces. His older daughter, Louise, died in 1933 leaving just the one child before mentioned, to whom was paid the sum of $25,000. The other daughter is living, is about sixty-six years of age, and has only the one daughter before mentioned, who is about thirty-two years of age, and it appears that she has children.

Only eighteen of the original thirty-nine nephews and nieces are now living. Some of those who have died have left children who have died leaving issue. Over one third of the remaining nephews and nieces are without issue. There are now at least sixty-four great-grandnephews and great-grandnieces and eight great-great-grandnephews and great-great-grandnieces.

Presumptively the word " children " means descendants of the first degree. (*Pimel* v. *Betjemann,* 183 N. Y. 194; *Matter of King,* 217 N. Y. 358; *Matter of Pulis,* 220 N. Y. 196; *Matter of Schaufele,* 252 N. Y. 65; *Matter of Curtis,* 252 App. Div. 256,

affd. 278 N. Y. 589.) This presumption is a rule of construction, however, and where it appears from the will as a whole that the testator meant to include more remote descendants, the word may be construed to accomplish such result. (*Prowitt* v. *Rodman*, 37 N. Y. 42; *Matter of Brown*, 93 N. Y. 295, 300; *Matter of Paton*, 111 N. Y. 480, 485 *et seq.*; *Matter of Weil*, 151 Misc. 841, 847 *et seq.*, affd. 245 App. Div. 822, affd. 271 N. Y. 608; 3 Restatement, Property, § 285.) The question before us, therefore, is whether or not it clearly appears from the will of this testator that he meant to include descendants in any degree in his use of the word " children ".

At the time of the execution of the will the testator's only children, though not young, had just begun to have children. It was natural that he should expect that they might have several more; and that one or more of them might die leaving issue prior to the death of the life beneficiaries. He gave to each of the children whom his daughters might leave the sum of $25,000 payable out of the trust fund. He dealt equally with them. If the word " children " were limited to first degree descendants of testator's daughters, and if Helen, the daughter of testator's daughter Caroline, were to predecease her mother, the gift which the testator meant for such grandchild would fail. Section 29 of the Decedent Estate Law is not designed to save such a gift. The testator gave all the rest of the trust fund to his nephews and nieces and their " children ". It cannot be presumed that even though his grandchildren predeceased his children, leaving issue, he meant to give all of this fund to his collaterals to the exclusion of his descendants. Under the circumstances it is not reasonable to believe that the testator used the word " children " in this respect in the limited sense. The presumption is that he did not intend to disinherit his descendants. (*Matter of Brown*, 93 N. Y. 295, 300, *supra; Smith* v. *Lawrence*, 66 Hun 362; Davids, New York Law of Wills, §§ 496, 647, 661.)

Under the plan of the will, and in view of the age of the testator's daughters at that time, it is evident that the testator expected that the greater part of the trust fund should be distributed among his collateral relatives as a part of his family, and that this was a " family " gift. There is nothing in the will to indicate his desire to favor one branch of such beneficiaries as against another. The contrary is true, for he directed that each nephew and niece and the children of each nephew and niece who survived him but predeceased the life beneficiaries, should share equally, in effect per stirpes. The

surplus income was given to such as would qualify in this class annually during the life of the life beneficiaries and the survivor of them. Upon the death of such survivor the class entitled to the distribution of the corpus of the trust is to be determined. In the event of the death of children of the nephews and nieces leaving issue, which has already happened in some instances, a limited construction of the word " children " would exclude such issue. This was not the intent of the testator. (*Matter of Blodgett,* 250 App. Div. 324, 332.) The gift was to such a large class that the testator did not know their precise status, and of course could not know what might transpire by the time of the death of his daughters. To cut off collaterals for the sole reason that their ancestors died before the testator's daughters, is not consonant with a " family " gift. (*Matter of Hart,* 185 Misc. 791.)

The primary gift to the nephews and nieces and the secondary gift to their children are gifts to classes. The Restatement of the Law of Property (part 3, § 302) provides for this situation as follows: " *Distribution — Class ' Children ' Substituted as the Takers of a Share of an Excluded ' Possible Taker ' in a Primary Class.* When a conveyance contains (a) a primary limitation in favor of a class; and also (b) a secondary limitation in favor of the ' children ' of a possible taker under the primary limitation, substituting such group as the takers of that share under the primary limitation which such possible taker would have taken if he had lived to the time of distribution, then, unless a contrary intent of the conveyor is found from additional language or circumstances, any share which becomes distributable under the terms of the secondary limitation is distributed per stirpes to the members of such substituted class, ascertained in accordance with the rules stated in §§ 285–290 and 294–299."

It has also been held that a testamentary provision deferring for a long time the determination of the ultimate takers of a gift, indicates an intention to include remote descendants. (*Pfender* v. *Depew,* 136 App. Div. 636, 640.)

The language of the will shows an intent to have equal per stirpital distribution, " and such intent is more completely accomplished by a broader inclusiveness of the term ' children ' ". (3 Restatement, Property, § 285, subd. [2], pars. [b], [d].) The word " children ", therefore, is construed as meaning " issue ", to wit, the descendants of such nephews and nieces in any degree. The " broader inclusiveness ", however, must be limited to per stirpital distribution (*Matter of Farmers' Loan & Trust Co.,* 213 N. Y. 168); and in this case it must also

be limited to blood relatives to the exclusion of adopted children or more remote adopted persons. (*Matter of Leask,* 197 N. Y. 193; *Matter of Battell,* 286 N. Y. 97; *Matter of Ellis,* 178 Misc. 491, affd. 264 App. Div. 846; Domestic Relations Law, § 115; 3 Restatement, Property, § 287; and cf. *Matter of Cohn,* 184 Misc. 258, affd. 271 App. Div. 775.)

Submit decree accordingly.